May it please the court, my name is Mark Humphrey from Des Moines. I have the privilege of representing Jeffrey Oppedahl and his family together with Tim Reed, my co-counsel from Des Moines. At the outset I'd like to just give you the benefit of a few facts to put this case in perspective. A tragic injury occurred to Tim Reed. Jeffrey was working on an operator's platform that was 18 inches from an unguarded rotating auger. He was wearing a safety vest because they found remnants of the safety vest intertwined in the auger after the fact. It was presumed that his safety vest got caught in the rotating auger, pulled him into the auger where it traumatically broke his neck and rendered him quadriplegic. There had been three prior significant injuries before Mr. Oppedahl's and according to his testimony there had been many close calls on this unguarded rotating auger. There was no safety cage around the rotating auger and importantly there was no dead man's switch and by that I mean when you start the rotation of the auger there is a lever to do that. If he took his hands off that lever the rotating auger would continue to operate rather than killing the power to the rotating auger. Both the drill and the auger were sold to the Iowa Department of Transportation, Mr. Oppedahl's employer, by Mobile Drill. We had significant discovery trying to determine the manufacturer of the auger but I think as the record shows in our brief and even counsel for Mobile Drill I think concedes on the record that was developed it was more likely than not that Mobile Drill was the supplier of both the augers as well as the drill. The drill had been sold in 1990 to the Iowa Department of Transportation and as such when this injury occurred 23 years later it was more than 15 years after Iowa's statute of repose. The augers were sold in 2012 within a year of this incident. We had the benefit of deposing a gentleman by the name of Mr. Orzeski who was the corporate representative designated by Mobile Drill pursuant to our 30B6 motion to gather some additional information. We learned some interesting facts from Mr. Orzeski and that is after the sale of this drill and the Iowa DOT had actually purchased six similar drills from Mobile Drill over the years beginning in 1990, after the sale one of the owners of Mobile Drill went to a conference in Europe and saw that in Europe they manufacture these with safety guards what Mobile Drill calls rotational guards because they didn't want to connote the name safety with it. He comes back from that and commissioned Mobile Drill to develop their own rotational guard for these rotating augers. Interestingly they have never sold one to a United States purchaser of a Mobile Drill mechanism. They have only sold it to Europe, Indonesia, several countries outside of the United States where Mr. Orzeski says the regulatory program in effect was more onerous than what existed in the United States. There's only about 300 of these drills in operation. He conceded that they clearly will last more than 20 years and it's not unusual to see them refurbished. We brought suit against Mobile Drill. Initially in our complaint we had both products liability and negligence theories of recovery. There was a motion to dismiss filed early on based upon the Iowa statute of repose and Judge Rose in the Southern District of Iowa dismissed the claims against Mobile Drill based upon the sale of the drill mechanism. Through the course of the case and the sale of the augers to the Iowa Department of Transportation in 2012 and our argument was based on section 19 of the restatement third of torts which has been adopted by the Iowa Supreme Court which says the conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party. Now there was a prior version of negligent entrustment in the restatement second of torts section 390. Importantly Iowa the Iowa Supreme Court had never adopted restatement second section 390. It has adopted section 19 of the restatement third of torts in a case entitled Brokaw which is the two restatement sections side-by-side. It was our argument to Judge Bremer below that section 19 is clearly broader than the provisions set forth in the restatement second of torts section 390 and it was further our argument that this case is tailor-made for section 19 of the restatement third of torts which has been adopted by the Iowa Supreme Court. I think one of the big issues in the case that this court has to struggle with is whether or not Judge Bremer went beyond her commission as a trial judge. As you well know credibility, determinations, weighing of the those of a judge you know that's that's a Reeves versus Sanderson plumbing case cited on page 37 of our original brief and it's our position that really Judge Bremer became a finder of fact in her ruling because she comes out and says that we had not shown that no mobile drill knew or had any reason to know that the Iowa Department of Transportation through its employees was using the augers it had purchased from mobile drill in a way that exposed the operators to an unreasonable risk of harm. That was in page 12 of document 149 her ruling. It is our position based upon the testimony of Mr. Orzeski that there was ample evidence in this record that a jury could reasonably find that mobile drill did have knowledge of the likelihood that the supplying of these augers would expose the ultimate user to a risk an unreasonable risk of harm. I say that because the underlying premise of this case is this mobile drill drilling mechanism is is worthless without some tooling usually an auger doesn't have to be in the context of this case it is. The DOT used it to take soil samples and the drill was mounted to the back of a truck it really is worthless until you connect the auger to the drilling mechanism. Likewise the auger itself is worthless until it's connected to the drilling mechanism otherwise it's just going to sit there and do nothing. We are not asserting and never have asserted under this negligent entrustment theory that there's anything wrong with the auger. We're not saying that the auger was manufactured as it was designed and there's no manufacturing defect there's nothing wrong with the auger it's the combination of the two and so our focus is not on the auger and not on the drilling mechanism that mobile drill sold to the IOD DOT our focus is on the conduct of mobile drill and making the decision to continue to supply augers that makes these drilling machines operational when it knows in the United States everybody's using these things without safety guards. Interestingly back in 1990 OSHA investigated another injury catastrophic injury amputation injury involving a mobile drill drilling mechanism that was unguarded and OSHA tells them back in 1990 in 1990 23 years earlier it's feasible to protect the workers that are using these machines from the risk of an unguarded rotating auger. 23 years later they're still not doing it. How far is what we're really talking about a duty here right? Well yes in a sense. So I guess the question becomes how far does this duty extend you have mobile who let's say they have a website or a catalog we can say I want to order part number so-and-so and I want to find one there and there and they are these these augers. If before they fulfill that order are they required to do some investigation to see if there is a cage to see if there is a dead man's switch because that you've already indicated that's another alternative safety device. What is their what is their duty to investigate to determine that there is no safety device on the on the on the on the machine I mean they know they didn't sell one but how do they know they didn't fabricate their own buy it from somebody else so do they have a duty to investigate? Well I think that's a great question and I would answer it in in with two components to my answer. First of all the Iowa Supreme Court adopted other provisions of the restatement third of torts in the Thompson versus Kaczynski case and we have we have detailed the essence of that case in our brief and that Thompson versus Kaczynski case says that as a general premise now the duty analysis is gone in Iowa after the adoption of that. So back when we had torts in law school and we talked about the foreseeability under the duty analysis and under the proximate cause analysis in Iowa now that duty that foreseeability duty analysis is gone we believe after Thompson versus Kaczynski but we also believe that there are two components to their knowledge bank that satisfy our burden and get us to the jury in this case and that is number one their objective knowledge that in this industry in the United States because the lack of a enforceable regulatory system which compels the use of safety guards and or dead man switches or remote controls that could get the guy off the platform which is only 18 inches away they knew and in fact Orzeski testified it's been hard to get users of these devices in the United States to buy into the concept that they need guards so they have this objective knowledge that it's an industry-wide custom to not use these guards in the United States they also know that that the Iowa Department of Transportation has not purchased their available guard now so that's another objective component to their knowledge they also know that the Iowa Department of Transportation excuse me did not request a dead man switch when they purchased the the drill from the mobile drill back in 1990 and it would have been provided at no charge had it been purchased we know that because of Gary beer the dead man switch in other words it would continue to operate even if the the operator took his hands off the switch so we believe number one there really is no duty analysis now left in Iowa and that we kick right in to section 6 which details what is negligence coupled with section 19 but we also believe that there is both objective and subjective evidence in this record that makes it a jury issue you know we are not Jeffrey Open all was using that thing in a way that was not intended in the shape that that piece of equipment left the manufacturer we are not so typically negligent entrustment talking about something about the user that physical inability to operate properly we're not talking about a piece of equipment that's being operated in exactly the way it was intended to be operated when it left the manufacturer well I agree with you your honor but but you are now focusing on the machine itself and the operation on the machine we are focusing on the decision that mobile drill made to continue to supply augers to a purchaser of its drilling mechanism knowing that it it more likely than not is being operated without a guard and I would also state that if you if you look at section 390 of the restatement second side-by-side with section 19 of the restatement third and we have included that in both in our brief for the court's benefit clearly the scope is broader now under section 19 of the restatement third of tours when you compare it to 390 they've expanded it and in fact the case that the Iowa Supreme Court adopted section 99 the brokaw case that involved a case where there was a vicious attack during a basketball game by a player from the other team and section 19 was adopted by the Iowa Supreme Court for that context now we will concede in that case they found that the coach who was also sued together with the school district did not have enough knowledge of this this other players vicious propensities to hold the coach responsible for putting him on the floor but in our case we believe we do and we believe judge Bremer substituted the role of the jury and overruled or in granting the motion for summary judgment it was customary for this piece of equipment to be operated without the safety barrier of the dead man's switch I think he said it was identified as a nationwide problem then this manufacturer couldn't sell to anybody without incorporating safety they incorporated in Europe and Indonesia kind of a veiled argument negligent manufacturer that the manufacturer should have equipped it with safety barrier a dead man's switch or some other safety devices it's to me like it's just getting at that in a kind of a roundabout way I I understand your view but I I would respectfully argue to the contrary and and I believe our argument is okay if you're going to make the decision to sell these devices without the safety incorporated into it then you can't complain when you continue to provide the tooling that makes it functional and it catastrophically injures somebody if Jeffrey I hope it all is running this thing in in Europe he still can walk in the United States he can't that does not seem right to me and we are simply trying to urge this court to give us our day in court under a negligent entrustment theory recognized by the Iowa Supreme Court I would like to reserve final two minutes of my time on rebuttal please a clip please the court my name is Joe happy I represent mobile drill I'm here to argue that the lower court should be sustained that the motion to dismiss and the motion for we disagree very strongly with the appellant on this case the the case began as a products liability case it was attacking the drill rig mechanism that sat on the truck and the auger and other there were other auger manufacturers and through a very extensive amount of discovery we to know a lot more about the the various manufacturers but before all that happened there was the motion to dismiss the motion to dismiss was based on the statute of repose the statute of repose had nothing to do or says nothing about refurbishment of the drill mechanism this is something that the appellant has argued in their their brief that the refurbishment of the truck by the Iowa Department of Transportation somehow reset I was statute of repose Iowa Code section six one four point one that's not there's the the statute itself is unambiguous in its language there's no provision for refurbishment if we look at the case law in in Iowa the courts have not at all address that question there is a US District Court case where the judge concluded that refurbishment of a medical drill would not have even reset the Iowa statute of pose precluded any further allegations concerning the drill rig and here's the problem that the appellant has in the case the dead man switch this cage that's all components of the drill rig it's not a component of the auger the auger is a simple device it's almost a commodity in the in the markets between the different manufacturers a drill drill or an auger is an auger is an auger and so it there's no such thing as an auger with a dead man switch and there's no such thing as an auger with any sort of a cage attached to it and that's why this is the appellant is attempting to take this case from a products liability case and apply general negligence standards because it's the last last hope simply put Iowa does not have any refurbishment extension of its statute of repose so that brings the discussion in this case to the motion for summary judgment which is of entrustment and to jump right in and to follow up on what mr. Humphrey was was arguing we have to we have to look at what this would mean if we did apply Thompson to a products liability case and of course I've cited the Huck case from the Iowa Supreme Court on page 40 of our Apple ease brief that I think is the basis of this court rejecting that argument but what what would be the consequence of saying that mobile drill negligently entrusted an auger to the Iowa Department of Transportation and what would that do to products liability case I have to think about that Milwaukee brand circular saw I have out in the garage why would why would any manufacturer want to entrust a dangerous device to someone they don't know what their skills are when the when it when a commercial seller like mobile drill cannot would have to somehow inquire into the fleet of drill rig mechanisms that sit on trucks with the Iowa Department of Transportation or any of their customers in the North American market and to find out what their skill sets are for their operators what their safety programs are what devices they specified when they purchased these these items oh and if they had refurbished it and this is this is something that's in the record the Iowa Department of Transportation in its in its shops they refurbish this and they could have put a cage on it they could have put a dead man switch on it or not the manufacturer is not all-knowing and the case law that we cite in our brief stands for the proposition that a commercial seller is not charged with that duty and a commercial seller has never been charged with a duty when they're providing a component that goes into a system and and we think that this is a very conclusive of this case judge below you asked the question about duty and I have to think that the duty to require a manufacturer to have that level of duty to essentially change the North American market as it's as it was discussed in mr. or zesky's transcript which is in the record is putting is essentially saying that the manufacturer would have to refuse to sell augers to anyone in in the North American market which is the market of mobile drill and and mr. or zesky does talk about the efficacy of these these caging devices but that's a fact that we don't need to get into because this is this is purely a legal argument here the statute repose precludes attack on the designer manufacturer of the drill rig the auger there's no design error there's no manufacturing error there's no failure of the duty to warn alleged that's been conceded by the appellant and so here we sit looking at only an argument that somehow a manufacturer has to have their their their purchasers fill out forms and and provide all sorts of information you know in a in an age where this isn't in the record but when in an age people are specifying what they want to purchase online this is just this is just impossible to do and it's impossible it's an impossible duty to ask a manufacturer to you know refrain from selling a component on this basis well what what essentially is I understand what we have here is a seller who sold a product the drill mechanism at a time when no one thought about the safety aspect of a cage or stem or what they feel should be done and there we later learned that there is a danger to using that and there is a way to mitigate that danger using the cage now I would assume there are other situations where and and they and then to continue to use the mechanism you have to provide an essential component the auger are there any cases that deal with that type of situation where whether there is a a duty to continue to sell or not continue to sell the essential component of a product that you now realize may be may be unreasonably dangerous no I don't see a duty why not and that's I didn't ask I said have you ever seen a case that even discusses that I haven't because that is essentially what we're talking about here I have not seen that and we we checked for that maybe somebody else will find one but I we certainly couldn't find a case that where where that was the framework that a manufacturer had to operate it I'm very concerned that we're getting so far afield when we're talking about negligent entrustment from a product's liability case and I language that the Huck court used in discussing the Thompson case and the Supreme Court in the Huck case pointed out that that Thompson was not a product's liability case and I quote we have not applied section 7 of the restatement third of torts in products liability actions rather in and the products restatement is clearly something that you know it should be applied in a product's liability case this is this is a backdoor way to you know get to a jury with a quadruple a tragic quadriplegic case to do it extreme expansion of products liability a law in Iowa if not a its head the case law that works so well in establishing the duties of a manufacturer relative to purchasers if there's not any other questions I'll conclude my remarks and thank you for your time how much time does mr. Humphrey have remain proceed thank you your honor may it please the court appreciate again the opportunity let me just emphasize to you that in the restatement third of torts under the products liability section the comments specifically state that negligent entrustment is still a theory that is available and I want to again emphasize we are not focusing on the condition of the product we are focusing on the decision to continue to supply the augers knowing that it was the combination of the two and more likely than not unguarded that exposed the ultimate user to a risk of severe injury I have tremendous respect for Joe happy he and I have been litigating cases for now almost 40 years I guess and I have tremendous respect but we've always seen this case differently and and I will agree with Joe that if I had my druthers I wish we had a products theory available we have briefed in our brief the refurbishment argument and I will stand by what we said in the brief but that doesn't eliminate the duty that exists because the duty is presumed now under Thompson versus Koshinsky under Iowa law and and when you presume the duty and you couple that with their objective knowledge as I discussed earlier and their subjective knowledge it is our argument to this court that's a jury decision based upon that is sufficient knowledge on the part of mobile drill they are a big player in this market in the United States they are continuing to make drills they know the market they know these guards aren't being used they know these things in the United States it's less safe to operate these equipment than it is in Europe and Indonesia and we want the opportunity to present this case to a jury this is not a throwaway theory that we've come up with this is a theory that is available under the restatement third of torts adopted by the Iowa Supreme Court and we believe the record demonstrates sufficient knowledge that judge Bremer was in air to grant the motion for recess for about